2005 ME 37

**Jeffrey STENZEL et al.**

v.

**DELL, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 19, 2004.
Decided: March 15, 2005.

---

Frederic L. Ellis, Esq., Edward D. Rapacki, Esq. (orally), Joseph M. Makalusky, Esq., Ellis & Rapacki, LLP, Boston, Jeffrey A. Thaler, Esq., Bernstein Shur Sawyer & Nelson, Portland, for plaintiffs.

Jeffrey M. White, Esq. (orally), Christopher R. Drury, Esq., Pierce Atwood, Portland, for defendants.

Panel: CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Jeffrey Stenzel and Robert Gerber appeal from a judgment of the Superior Court (Cumberland County, *Crowley, J.*) dismissing their class action complaint in favor of enforcing an arbitration clause in the standard form agreement between them and Dell.[1] Stenzel and Gerber's first amended complaint alleged that Dell had unlawfully collected sales taxes from them on service contracts and shipping charges. On appeal, they argue that the court erred in dismissing the action because (1) they never manifested an intent to be bound by the arbitration clause; (2) the contract as a whole, and the arbitration clause in particular, are illusory; and (3) the arbitration clause is unconscionable. We disagree and affirm the judgment. We also affirm the judgment as it applies to QualXServ, LLC, and BancTec, Inc., the third-party service providers, because, as Dell's assigns, they are expressly entitled to enforce the arbitration provision.

## I. CASE HISTORY

[¶ 2] Dell is a Texas-based computer company that ships the computers it sells from Texas and Tennessee. In addition to selling computers, Dell sells service contracts on its own behalf and as an agent for service providers such as BancTec, Inc. and QualXServ, LLC. In October 2002, Stenzel purchased a Dell computer and an optional service contract through Dell's telephone sales process. He paid $2670.15, $127.15 of which was sales tax on a "taxable" amount that included the service contract and a charge for shipping the computer to Stenzel's business in Brunswick. Gerber likewise purchased a Dell computer and optional service contract,

---

1. The defendants named in this action are Dell, Inc., Dell Catalog Sales Limited Partnership, Dell Marketing Limited Partnership, and service providers QualXServ, LLC, and BancTec, Inc. Throughout this opinion, we refer to the defendants generally as Dell. We refer to QualXServ, LLC, and BancTec, Inc., specifically, as the service providers.

but did so through Dell's Internet website. He paid $2514.65, $10.65 of which was sales tax on a "taxable" amount that included the service contract and a charge for shipping the computer to his home in Freeport. After collecting sales tax, Dell either turns it over to the service providers for remission to the State of Maine or remits the amounts directly to the State on behalf of the providers.

[¶ 3] After receiving computer orders, Dell sends customers an order acknowledgment form, the back of which contains Dell's "Terms and Conditions Agreement." A copy of the agreement is also included in the box in which the computer is shipped, and the agreement is available for customers to view on Dell's website before placing orders. The agreement begins with the following notice:

### PLEASE READ THIS DOCUMENT CAREFULLY!

IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU. THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE

[¶ 4] The two provisions most central to this dispute are the reservation clause in the preamble to the agreement, which reserves to Dell the unilateral right to change the agreement, and an arbitration clause requiring any claim against Dell to be submitted to binding arbitration. The reservation clause states: "These terms and conditions are subject to change without prior written notice at any time, in Dell's sole discretion." The arbitration clause provides:

13. Binding Arbitration. ANY CLAIM ... AGAINST DELL, its agents, employees, successors, assigns or affiliates (collectively for purposes of this paragraph, "Dell") arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) .... The arbitration will be limited solely to the dispute or controversy between Customer and Dell.

The agreement also contains a choice of law provision that establishes that sales subject to the agreement are governed by the laws of Texas.

[¶ 5] In June 2003, Stenzel and Gerber filed a class action complaint in the Superior Court that challenged Dell's collection of sales tax on service contracts and shipping charges because Maine does not impose a sales tax on those costs. 36 M.R.S.A. §§ 1752(14)(B)(4), (14)(B)(7), 1811 (Supp.2004). Dell moved to dismiss the complaint in favor of arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–307 (1999 & Supp.2004), or, in the alternative, the Maine Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (2003). Having found the arbitration clause to be neither procedurally nor substantively unconscionable, the trial court dismissed the complaint in favor of arbitration. This appeal followed.

## II. DISCUSSION

[¶ 6] We review a trial court's decision on a "motion to compel arbitration for errors of law and for facts not sup-

ported by substantial evidence in the record." *Saga Communications of New England, Inc. v. Voornas,* 2000 ME 156, ¶ 7, 756 A.2d 954, 958. Under both the Federal and Maine Arbitration Acts, a trial court must "proceed summarily" when a party opposes an application to compel arbitration. 9 U.S.C.A. § 4 (1999); 14 M.R.S.A. § 5928(1) (2003); *see also* 9 U.S.C.A. § 6 (1999) ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions ...."). As we stated in *Macomber v. MacQuinn–Tweedie,* summarily " 'has been defined to mean that a trial court should act expeditiously and without a jury trial to determine whether a valid arbitration agreement exists.' " 2003 ME 121, ¶ 14, 834 A.2d 131, 136 (quoting UNIF. ARBITRATION ACT § 7, 7 U.L.A. 18 cmt. (Supp.2004)); *see also World Brilliance Corp. v. Bethlehem Steel Co.,* 342 F.2d 362, 365–66 (2nd Cir. 1965) (stating that the policy of 9 U.S.C.A. § 6 "is to expedite judicial treatment of matters pertaining to arbitration"). Here, the trial court decided to dismiss and compel arbitration based on the pleadings, and the affidavits and exhibits submitted by the parties.

### A. Choice of Law for Determination of Contract Formation

■ [¶ 7] The agreement provides: "THIS AGREEMENT AND ANY SALES THEREUNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES." When a contract contains a choice of law provision, we generally will interpret the contract under the chosen state's laws. *Schroeder v. Rynel, Ltd.,* 1998 ME 259, ¶ 8, 720 A.2d 1164, 1166 (citing RESTATEMENT (SECOND) CONFLICTS OF LAWS § 187(2) (1971)). Where, as here, a contract involving inter-

state commerce contains an arbitration provision, the FAA governs. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 269, 271–72, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In such situations, the FAA ordinarily preempts state law. *Id.* at 272, 115 S.Ct. 834. In deciding whether an arbitration clause is enforceable in the first place, however, courts apply state contract law principles. *See* 9 U.S.C.A. § 2 (1999); 14 M.R.S.A. § 5928(1); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Patrick v. Moran,* 2001 ME 6, ¶ 5, 764 A.2d 256, 257; *In re Palm Harbor Homes, Inc.,* 129 S.W.3d 636, 641–42 (Tex. App.2003). Accordingly, we rely on Texas law in deciding whether Stenzel and Gerber are bound by the arbitration clause.

■ [¶ 8] Stenzel and Gerber assert that we should not apply the Texas choice of law provision in deciding whether an arbitration agreement exists because that presupposes the existence of a valid contract. They also observe, however, that "there do not appear to be any significant differences between the laws of Texas and Maine on this score." Stenzel and Gerber do not contend that the Superior Court erred by adhering to the agreement's choice of law provision or that they were harmed as a result. Accordingly, we assume, without deciding, that the agreement's choice of law provision controls and that Texas law governs the determination of all of the issues presented by this appeal.

### B. Plaintiffs' Acceptance of the Arbitration Agreement

[¶ 9] Stenzel and Gerber argue that the trial court erred in dismissing the case in favor of arbitration because Dell failed to prove that they accepted the arbitration

agreement. Specifically, they reason that because Dell did not advise them of the right to reject the terms of the agreement—including the arbitration clause—or of the method by which to communicate their rejection, their acceptance of the agreement cannot be inferred from their failure to do so.

[¶ 10] "[I]n order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook [and its] material terms ... must be agreed upon before a court can enforce [it]." *Lynx Exploration & Prod. Co. v. 4–Sight Operating Co.,* 891 S.W.2d 785, 789 (Tex.App.1995) (citations omitted). "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." TEX. BUS. & COM. CODE ANN. § 2.204(a) (Vernon 2004). We have noted that a seller "is the master of his offer, and is entitled to establish such standards of acceptance, notice, and the like as he sees fit." *Motel Servs., Inc. v. Cent. Me. Power Co.,* 394 A.2d 786, 789 (Me.1978).

[¶ 11] The agreement contains the following provision regarding the means by which a purchaser accepts its terms and conditions:

> By accepting delivery of the computer systems, related products, and/or services and support, and/or other products described on that invoice[, the customer] agrees to be bound by and accepts these terms and conditions. If for any reason Customer is not satisfied with a Dell-branded hardware system, Customer may return the system under the terms and conditions of Dell's Total Satisfaction Return Policy ....

Stenzel and Gerber contend that the agreement, including its arbitration clause, is unenforceable because, although the agreement provides expressly the method to reject a hardware system, it fails to provide expressly the method to reject the terms of the agreement.

[¶ 12] The trial court found that Stenzel and Gerber "had at least three opportunities to review the terms of the agreement, including the arbitration clause, before deciding to accept or reject it." Their failure to refuse delivery of the computers or to exercise their right to return the computers once they were delivered was conduct by which both parties recognized the existence of a contract. *See* TEX. BUS. & COM. CODE ANN. § 2.204(a). By accepting delivery of the computers, and then failing to exercise their right to return the computers as provided by the agreement, Stenzel and Gerber expressly manifested their assent to be bound by the agreement, including its arbitration clause. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Hill v. Gateway 2000, Inc.,* 105 F.3d 1147, 1148–49 (7th Cir.1997); *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1452 (7th Cir.1996).

[¶ 13] Stenzel and Gerber also assert that the trial court failed to expressly find that they accepted the arbitration clause. Although the court did not make a specific finding, it is apparent from the court's detailed and thoughtful analysis of the unconscionability claim, that it viewed Stenzel and Gerber as having manifested their assent to the arbitration provision. The record supports such a conclusion.

[¶ 14] Accordingly, the court did not err in concluding that Stenzel and Gerber manifested their acceptance of the arbitration clause in the agreement.

C. Whether the Agreement to Arbitrate is Illusory

[¶ 15] As a preliminary matter, Dell, citing *Prima Paint Corp. v. Flood &*

*Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), contends that the court should not have considered Stenzel and Gerber's claim that the reservation clause renders the arbitration clause illusory. In *Prima Paint*, the party seeking to avoid arbitration asserted that it should not be bound by the arbitration provision in the contract because the contract was fraudulently induced. 388 U.S. at 398, 87 S.Ct. 1801. The Court held that because the defense of fraudulent inducement went to the validity of the contract as a whole—a question properly subject to arbitration—and not to the parties' inclusion of an arbitration provision in their contract, the defense of fraudulent inducement should not be considered by a trial court in determining whether the dispute is arbitrable. *Id.* at 403–04, 87 S.Ct. 1801. Here, in contrast, Stenzel and Gerber assert that the agreement's reservation clause specifically operates to render the arbitration clause illusory because Dell could rely on the reservation clause to modify the agreement's terms governing arbitration at any time. Accordingly, the question of whether the arbitration clause is illusory was properly considered by the trial court even though the question necessarily blends into the larger question of whether the entire agreement is illusory. *See A.T. Cross Co. v. Royal Selangor(s) PTE, Ltd.*, 217 F.Supp.2d 229, 234 (D.R.I. 2002) (stating in connection with a challenge to an arbitration clause, "[i]t does not matter, contrary to defendant's argument, that plaintiff's challenge could also apply to the existence of the entire contract.").

[¶ 16] Stenzel and Gerber's assertion that the arbitration clause is illusory is based on the reservation clause in the preamble: "These terms and conditions are subject to change without prior written notice at any time, in Dell's sole discretion." Stenzel and Gerber assert that Dell's unfettered right to alter the agreement, including the arbitration clause, renders the agreement to arbitrate illusory. Dell counters, and the trial court concluded, that the reservation clause merely serves to provide notice to Dell's on-line customers that future sales may be covered by different terms and conditions. In support of this construction, the court noted that other provisions in the agreement, most notably its integration clause, establish Dell's intention to be bound by the agreement's terms once a purchaser has accepted delivery of a Dell computer. The agreement's integration clause states that absent a separate written agreement, any attempt to alter the terms of the agreement is prohibited.[2]

[¶ 17] A separate provision of the agreement cited by the court in support of its construction provides:

THESE TERMS AND CONDITIONS APPLY (i) UNLESS THE CUSTOMER HAS SIGNED A SEPARATE PURCHASE AGREEMENT WITH DELL, IN WHICH CASE THE SEPARATE AGREEMENT SHALL GOVERN; OR (ii) UNLESS OTHER DELL STANDARD TERMS APPLY TO THE TRANSACTION.

[¶ 18] Stenzel and Gerber contend that this provision does not lend additional sup-

---

2. The agreement's integration clause states: Other than as specifically provided in any separate formal purchase agreement between Customer and Dell, these terms and conditions may NOT be altered, supplemented, or amended by the use of any other document(s). Any attempt to alter, supple-

ment or amend this document or to enter an order for product(s) which is subject to additional or altered terms and conditions will be null and void, unless otherwise agreed to in a written agreement signed by both Customer and Dell.

port to the court's construction because the use of the present perfect verb tense ("has signed") in the first clause refers to an agreement that has already been completed and does not anticipate future agreements. *See Barrett v. United States,* 423 U.S. 212, 216, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976) (explaining that the present perfect tense "denot[es] an act that has been completed"). They also contend that the second clause is inapplicable because it merely informs customers that other standardized terms may be applicable to the transaction.

[¶ 19] Contrary to Stenzel and Gerber's contentions, both clauses support the court's construction of the agreement and neither renders the agreement illusory. The first clause is consistent with the court's construction because it simply provides that absent a separate, signed purchase agreement, the purchase is governed by the terms and conditions of the agreement. The second clause also supports the court's construction because it has the effect of rendering the agreement the exclusive source for the transaction's terms and conditions in the absence of other applicable Dell standard terms. Neither party asserts that there are other Dell standard terms that apply to Stenzel and Gerber's purchases.

[¶ 20] Under Texas law, contracts must be construed "as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 292 (2004) (footnote omitted); *see also Acadia Ins. Co. v. Buck Constr. Co.,* 2000 ME 154, ¶ 9, 756 A.2d 515, 517; *Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985).

These principles counsel in favor of giving harmonious effect to both the reservation and integration clauses by construing them to mean that prior to a customer's acceptance, Dell is free to unilaterally alter, supplement, or amend the terms of the agreement, but once a customer has manifested its acceptance of the agreement, the agreement cannot be altered by either party absent a formal written agreement authorizing the same.

[¶ 21] Stenzel and Gerber also assert, however, that the apparent conflict between the reservation and integration clauses results in an ambiguity that must be construed in their favor because the agreement is an adhesion contract prepared by Dell. *See Liszt v. Karen Kane, Inc.,* No. 3:97–CV–3200–L, 2001 U.S. Dist. LEXIS 8824, at *30–31; 2001 WL 739076, at *9 (N.D. Tex. June 27, 2001); *see also Dairy Farm Leasing Co. v. Hartley,* 395 A.2d 1135, 1139–40 n. 3 (Me.1978). A contract of adhesion is construed against the drafter. *Crown Cent. Petroleum Corp. v. Jennings,* 727 S.W.2d 739, 741 (Tex.App. 1987). Stenzel and Gerber would have us construe the agreement in their favor by concluding that the reservation clause renders the entire agreement, including the agreement to arbitrate, illusory and, therefore, unenforceable.

[¶ 22] We need not determine whether the two provisions result in an ambiguity, because even if they do, it would not justify the invalidation of the agreement as suggested by Stenzel and Gerber. If the agreement is ambiguous, the reservation clause must be construed against Dell and in favor of its customers by restricting Dell's right to modify the terms of the agreement as to future purchases only. The opposite result—invalidating the entire agreement, including the arbitration provision—would be contrary to the reasonable expectations of the mem-

bers of the public who purchase computers from Dell.

[¶ 23] Neither the agreement as a whole nor its requirement of arbitration is illusory.

## D. Unconscionability

[¶ 24] Stenzel and Gerber contend that the circumstances surrounding the creation of the arbitration clause render the agreement to arbitrate procedurally and substantively unconscionable.

[¶ 25] The Texas Supreme Court has held that a court "may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." *In re Halliburton Co. & Brown & Root Energy Servs.*, 80 S.W.3d 566, 572 (Tex.2002). Unconscionability is a defense to the enforcement of an arbitration provision. *Id.* "[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001). When procedural unconscionability is at issue, the inquiry "concerns assent to the ... agreement and focuses on the facts surrounding the bargaining process." *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 371 (Tex.App.2000).

[¶ 26] Stenzel and Gerber contend that as a contract of adhesion, the agreement was procedurally unconscionable because they had no meaningful opportunity to negotiate its terms. The trial court correctly found that the agreement is a contract of adhesion, which is a "standardized contract [form] offered to consumers of goods and services on an essentially 'take it or leave it' basis which limit[s] the duties and liabilities of the stronger party." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex. 1987). Under Texas law, however, "adhesion contracts are not automatically unconscionable or void." *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex.1999). A party asserting that an arbitration clause in an adhesion contract is unconscionable must, therefore, establish substantive unconscionability. *See Halliburton*, 80 S.W.3d at 572. Accordingly, we turn to the question of substantive unconscionability.[3]

[¶ 27] When substantive unconscionability is at issue, the inquiry focuses on the fairness of the agreement. *See H.E. Butt*, 17 S.W.3d at 371. Stenzel and Gerber argue that the arbitration clause is so one-sided as to render it substantively unconscionable. First, they point out that only customers, and not Dell, are required to submit claims to arbitration. Nevertheless, "an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration." *FirstMerit*, 52

**3.** Stenzel and Gerber also contend that Dell's use of the Better Business Bureau's OnLine Reliability Seal renders the agreement procedurally unconscionable because of Dell's failure to comply with some of the terms of the BBB OnLine program. They point out, for example, that Dell did not comply with the program's requirement of a separate signature line where a consumer can acknowledge acceptance of an agreement to arbitrate. As the trial court pointed out, however, the BBB standards are "guidelines for on-line businesses to aspire to and are not legally binding." Furthermore, participation in the BBB OnLine program requires only that businesses substantially comply with BBB criteria. Accordingly, Dell's failure to comply with some of the terms of the BBB OnLine program does not render the agreement procedurally unconscionable.

S.W.3d at 757. Accordingly, the agreement is not unconscionable because, even though the arbitration clause lacks mutuality of obligation, the underlying contract for the sale of Dell computers is supported by adequate consideration.

[¶ 28] Stenzel and Gerber also contend that the arbitration provision is substantively unconscionable because it expressly precludes them from bringing class action lawsuits. The Texas Supreme Court has held, however, that "[p]rocedural devices" such as class actions "may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'" *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex.2000) (quoting TEX. R. CIV. P. 815). Furthermore, "[t]he Federal [Arbitration] Act is part of the substantive law of Texas." *Capital Income Props.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992). Accordingly, the Texas Court of Appeals has held that "there is no entitlement to proceed as a class action." *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex.App.2003). Although "there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness," an arbitration provision that precludes the use of class actions is not necessarily substantively unconscionable. *Id.; see also DeFontes v. Dell*, No. PC 03–2636, 2004 R.I.Super., 2004 WI 253560, at *10–11, LEXIS 32, at *27–28 (Jan. 29, 2004).

[¶ 29] Finally, Stenzel and Gerber assert that the costs associated with arbitrating individual claims effectively preclude them from obtaining relief. The United States Supreme Court has ruled that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Pursuant to Texas law, in order to establish unconscionability, the party challenging an arbitration clause must establish who will conduct the arbitration as well as a detailed showing of the arbitration costs. *See In re FirstMerit Bank*, 52 S.W.3d at 756–57 (citing *Green Tree*, 531 U.S. at 90–91 & n. 6, 121 S.Ct. 513).

[¶ 30] The agreement expressly requires Stenzel and Gerber to submit claims to the National Arbitration Forum (NAF). Pursuant to NAF rules, purchasers incur a $25 filing fee to initiate arbitration, which can be completed without a hearing through written submissions, and an additional $75 fee if a participatory hearing is scheduled. Purchasers will also incur an additional $100 fee if they request written findings from the arbitrator.

[¶ 31] The mandatory fees associated with the arbitration might lead us to conclude that the arbitration clause is unconscionable if the fees required by the agreement were an insurmountable barrier to a complete recovery by a claimant. Rule 37(c) of the NAF Code of Procedure provides, however, that an arbitration "[a]ward may include fees and costs awarded by an Arbitrator in favor of any Party." NATIONAL ARBITRATION FORUM, CODE OF PROCEDURE 27 (July 1, 2003). Because an NAF arbitrator can award a successful Dell customer the fees and costs of arbitration, Stenzel and Gerber have not established the likelihood of incurring prohibitively expensive costs by proceeding through the NAF's procedures.

[¶ 32] Assessing the totality of the circumstances at the time the parties entered into the agreement, we cannot conclude that the one-sided aspects of the arbitra-

tion provision render it unconscionable. *See El Paso Natural Gas Co. v. Minco Oil & Gas Co.,* 964 S.W.2d 54, 61 & n. 5 (Tex.App.1997), *rev'd on other grounds,* 8 S.W.3d 309 (Tex.1999).

E.  Enforcement of the Arbitration Provision by the Service Providers

[¶ 33] Stenzel and Gerber contend that even if the arbitration clause is enforceable between them and Dell, it is not enforceable as between them and the third-party service providers, BancTec and QualXServ. They assert that the service providers are not the "agents, employees, successors, assigns or affiliates" of any Dell entity, and they add that the separate service agreements they received directly from the service providers following their purchases do not address arbitration. Consequently, they assert the court should not have dismissed their claims against the service providers in favor of arbitration.

[¶ 34] The trial court's decision granting Dell's motion to dismiss and to compel arbitration did not expressly address whether the service providers could enforce the arbitration provision; nor did Stenzel and Gerber request additional findings concerning enforcement by the service providers.

[¶ 35] Before us, the parties have focused primarily on whether BancTec and QualXServ qualify as Dell's "agents" and, as such, can enforce the arbitration clause. We agree with Stenzel and Gerber that Dell acted as the agent of BancTec and QualXServ, and not vice versa, by contracting to provide Stenzel and Gerber extended service on their new computers. Nonetheless, we conclude that BancTec

and QualXServ can enforce the arbitration provision because they are also the assigns of Dell.

[¶ 36] Dell receives a single payment for both the computer and any extended service purchased by a customer and, in some instances, the obligation to provide the extended service is assumed by a service provider other than Dell. Both Stenzel and Gerber's acknowledgment forms refer to the purchase of a service contract, but neither identify the third-party service provider slated to provide the extended service.[4]

[¶ 37] Because Dell's acknowledgment forms include the charges for the service contracts, and customers' payments are made directly to Dell, it can fairly be inferred that Dell remits all or a portion of the payment for the service contracts to the third-party service providers. Consequently, the service providers become Dell's assigns and, as such, are delegated Dell's duty of performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance."); *id.* § 318(1) ("An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise."); *see also* TEX. BUS & COM. CODE ANN. § 2.210(b) (Vernon Supp.2004) ("Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of

4. Stenzel's acknowledgment does not specify whether the service was to be provided directly by Dell or by one of the service providers, and Gerber's expressly states that his service would be provided by a third party. On Gerber's acknowledgment there is an item described as a "Type 3–Third Party At Home Service, 24x7 Technical Support."

the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance."). Pursuant to the agreement's arbitration clause, any claim against Dell's assigns shall be resolved exclusively by arbitration. Accordingly, the trial court did not err in dismissing Stenzel and Gerber's claims against all of the defendants, including BancTec and QualXServ, and in granting Dell's motion to compel arbitration.

The entry is:

Judgment affirmed.