STATE OF MAINE                                    SUPERIOR
COURT

Cumberland, ss.

WILLIAM TEMM and DALE TEMM

                    Plaintiffs

                v.                          Docket No. PORSC-CV-16-
0014

LPL FINANCIAL LLC,
TRSS WEALTH MANAGEMENT LLC,
MICHAEL A. REED, BRUCE SAWYER,
ANDREW C. STICKNEY
and THOMAS M. BRUNELLE,

                    Defendants

### ORDER ON MOTION TO STAY PROCEEDINGS
### AND COMPEL ARBITRATION

This case is before the court on the Motion to Stay Proceedings and

Compel Arbitration filed by Defendant LPL Financial LLC ["LPL"], along with the

Plaintiffs' opposition thereto, and LPL's reply. Also before the court is Plaintiffs'

Motion for Expedited Discovery, Depositions and Interrogatories, with

Defendants' opposition thereto.

The court elects to decide both motions without oral argument. *See* M.R.

Civ. P. 7(b)(7).

*Background:*

According to Plaintiffs' Complaint[1] in this case, Plaintiff William Temm is a

certified financial advisor with more than 30 years of experience, and is married

---

[1] Plaintiffs filed an Amended Complaint after the Defendants had served responsive pleadings, without filing a motion for leave to amend. *See* M.R. Civ. P. 15(a). If the Plaintiffs wish their Amended Complaint to be considered in this case, they will need to file a motion for leave to amend.

1

to Plaintiff Dale Temm. In 2002, William Temm and Defendants Michael Reed, Bruce Sawyer and Andrew Stickney formed TRSS Wealth Management LLC, a firm providing financial advisory and management services. Shortly thereafter, Mr. Temm and the others each entered into a Representative Agreement with LPL, which is a broker dealer in securities.

Plaintiffs' Complaint alleges that the Defendants are liable for a variety of wrongful acts and omissions involving William Temm. Dale Temm asserts derivative claims for loss of consortium.

Defendant LPL's Motion to Stay Proceedings and Compel Arbitration asserts that Mr. Temm's Representative Agreement with LPL contains a mandatory arbitration clause, and is supported by an affidavit incorporating a copy of the Representative Agreement. *See* Affidavit of Brad Jacobs, Ex. A, section 7(C).

Plaintiffs' Motion to Expedite Discovery is based on Mr. Temm's allegation that he has been diagnosed with amyotrophic lateral sclerosis (ALS), and may have only a short time left to live. He also asserts that the ALS diagnosis is a reason not to compel him to submit his claims against LPL to arbitration.

*Analysis*

1. *LPL Motion to Stay Proceedings and Compel Arbitration*

As a prefatory matter, it should be noted that whether to enforce the arbitration provision on which LPL relies is to be decided under Maine law, to be determined under the Maine Arbitration Act and the jurisprudence associated with it, *see* 14 M.R.S. §§5927 et seq., whereas interpretation of the arbitration provision and other provisions of the Representative Agreement is governed by

2

Massachusetts law. The Representative Agreement between LPL and Mr. Temm recites that it is to be construed in accordance with Massachusetts law. *See* Affidavit of Brad Jacobs, Ex. A, section 7(B).

The Maine Arbitration Act provides, in pertinent part: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." 14 M.R.S. § 5927.

LPL's Motion establishes that Mr. Temm's written contract with LPL contains the following arbitration provision:

> Representative hereby expressly agrees to submit to final and binding arbitration before the National Association of Securities Dealers, Inc. any and all disputes, claims or controversies relating to Representative's association with or termination from LPL. Representative expressly gives up the right to sue in a court of law or equity, including the right to trial by jury. Specific examples of disputes, claims or controversies that are required to be arbitrated include, but are not limited to, allegations of unlawful termination, sexual or racial harassment or discrimination on the job, gender discrimination, and claims of age or handicap discrimination.

Affidavit of Brad Jacobs, Ex. A, section 7(C).

Section 7(C) is obviously an arbitration provision in a written contract for purposes of section 5927 of the Maine Arbitration Act. Moreover, all of the Plaintiffs' claims against LPL are within the scope of section 7(C), in that all of the claims "relat[e] to [Mr. Temm's] association with or termination from LPL." Therefore, if section 7(C) is enforceable, all of the Plaintiffs' claims are subject to mandatory binding arbitration, and cannot be pursued independently in this case.

If section 7(C) is enforceable, the arbitration would occur under the aegis of the Financial Industry Regulatory Authority (FINRA). Plaintiffs in their

3

opposition memorandum refer repeatedly to the FINRA website, www.finra.org. FINRA has a detailed structure and process for arbitration claims, including separate arbitration codes for customers (i.e. investors not affiliated with the securities industry) and industry professionals and entities.

However, Plaintiffs contend that the arbitration agreement reflected in section 7(C) should not be enforced against them. Plaintiffs' primary basis for opposing a stay of this case is that the arbitration clause is procedurally and/or substantively unconscionable.

Under Maine law, "[u]nconscionability is a defense to the enforcement of an arbitration provision. The basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Stenzel v. Dell, Inc.,* 2005 ME 37, ¶25, 870 A.2d 133, 143, *quoting In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757, 44 Tex. Sup. Ct. J. 900 (Tex. 2001) (internal quotation and citation omitted).

Procedural unconscionability focuses on the circumstances surrounding the formation of the agreement to arbitrate. *See Stenzel* at ¶25, 870 A.2d at 143 Substantive unconscionability focuses on the fairness of the arbitration agreement. *Stenzel* at ¶27, 870 A.2d at 143.

Plaintiffs' procedural unconscionability claim boils down essentially to the contention that the Representative Agreement between Mr. Temm and LPL is a contract of adhesion rather than the product of negotiation. In *Stenzel v. Dell, Inc.,* the Law Court defined a contract of adhesion as a "standardized contract

4

[form] offered to consumers of goods and services on an essentially 'take it or leave it' basis which limits the duties and liabilities of the stronger party." *Id.* ¶26, 870 A.2d at 143, *quoting Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355, 31 Tex. Sup. Ct. J. 47 (Tex. 1987).

The Representative Agreement does appear to be a standardized agreement drafted by LPL, and there is no indication that the parties specifically negotiated the dispute resolution provision at section 7(C). On the other hand, Mr. Temm was not a consumer of goods or services, but a securities industry professional. Also, as LPL points out, the Complaint alleges that Mr. Temm interviewed several broker dealers before choosing LPL, plainly indicating that he had a choice of whether to enter into the contract with LPL.

Even assuming that the Representative Agreement is a contract of adhesion, the Law Court in *Stenzel* made it clear that "[a] party asserting that an arbitration clause in an adhesion contract is unconscionable must [] establish substantive unconscionability." *Stenzel* at ¶26, 870 A.2d at 143, *quoting In re Halliburton Co. & Brown & Root Energy Servs.,* 80 S.W.3d 566, 572, 45 Tex. Sup. Ct. J. 720 (Tex. 2002).

Plaintiffs' argument for substantive unconscionability relies substantially on the Law Court decision in *Barrett v. McDonald Investments, Inc.,* 2005 ME 43, 870 A.2d 146, particularly on the list of factors for determining substantive unconscionability enumerated in Justice Alexander's concurring opinion in *Barrett.*

At the outset, it should be noted that the section 7(C) does not suffer from the ambiguity that existed in the arbitration provision at issue in *Barrett.* That

5

provision covered "all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us pertaining to securities," 2005 ME 43, ¶3, 870 A.2d at 147-48, and was determined to be ambiguous in terms of its applicability to the plaintiffs' tort claims. *Id.* ¶19, 870 A.2d at 151. In contrast, Section 7(C) of the Representative Agreement covers "all disputes, claims and controversies relating to [Mr. Temm's] association with or termination from LPL," not just disputes involving construction, performance or breach of the Representative Agreement. Under Massachusetts law, the provision is not ambiguous, and the same result would obtain applying Maine law.

Another distinction between the *Barrett* case and this case is that the Barretts were consumers, whereas Mr. Temm has been a financial professional. That fact alone makes the Plaintiffs' argument for substantive unconscionability more difficult, even in light of the factors listed in Justice Alexander's concurrence that the Plaintiffs cite in their opposition:

- One factor focuses on whether potential arbitrators are employed in one or the other party's field of business: In *Barrett,* as noted above, the plaintiffs were consumers and the defendants were industry entities or professionals. Here, Mr. Temm and LPL are both from the industry.

- Another factor focuses on whether arbitrators would favor "repeat players" over consumers unlikely to be involved in arbitration again: Mr. Temm and LPL are from the industry, and there is nothing indicating that either has more "repeat" experience with FINRA arbitration than the other.

6

- Several of the factors compare the cost of arbitration to the cost of litigation in the courts, particularly as they may discourage small claims or discriminate against consumers of modest means: Here, Plaintiffs contend that the substantial fees associated with FINRA arbitration would pose "an undue economic burden," but have not substantiated that contention, particularly in light of their allegation in the Complaint that Mr. Temm earned an average income of $440,000 per year during the ten years ending in 2012. Their premise that arbitration is more expensive than litigation is not necessarily valid.

- Other factors relate to the confidentiality of the arbitration process: A number of Plaintiffs' claims allege injury resulting from the disclosure of confidential information, so a confidential dispute resolution process can hardly be seen as a detriment.

- Still other factors relate to the absence of rules of evidence and limitations on discovery in arbitration: These features are indeed common in arbitration; in keeping with the goal of affording a simple, expeditious, final and inexpensive dispute resolution process. To the extent Plaintiffs' claims against the other Defendants in this case proceed (a question raised by the other Defendants' pending motions), Plaintiffs can still take certain discovery (meaning only the discovery that a party to an action can obtain from a non-party) from LPL, to the extent such discovery is reasonably calculated to lead to the discovery of admissible evidence in the context of Plaintiffs' claims against the other Defendants. Whether discovery taken in this case would be admissible in any FINRA arbitration

7

proceeding is not for this court to decide, but Plaintiffs can certainly use discovery from this case in framing their arbitration case.

The court concludes that the Plaintiffs have not established that the arbitration agreement reflected in section 7(C) is unconscionable.

Plaintiffs also make an argument based on judicial economy, noting that they claims they have asserted against LPL are intertwined with those they have asserted against the other Defendants. But Plaintiffs cannot bootstrap their own choice to name multiple defendants into an excuse for avoiding a binding arbitration clause involving one defendant.

Lastly, to the extent Plaintiffs contend that Mr. Temm's illness and limited life expectancy justify allowing them to pursue their claims against LPL here instead of in arbitration, the arbitration process is intended to be, and often is, a speedier means of resolving disputes than is litigation.

Accordingly, LPL's Motion will be granted as it relates to a stay of the Plaintiffs' claims against LPL.

The stay applies to the claims of both Plaintiffs against LPL, but the distinction between William Temm's claims and Dale Temm's claims merits brief discussion. Because Dale Temm did not sign the Representative Agreement, any independent claims she might have against LPL are not subject to section 7(C). The affidavit of Brad Jacobs filed with LPL's motion attaches several agreements relating to Dale Temm's accounts with LPL, also containing arbitration provisions. It is not clear that any of her claims in the Plaintiffs' Complaint relate to those accounts. LPL contends, with support from other jurisdictions, that regardless of whether Dale Temm's claims relate to her own

8

accounts or whether they derive from Mr. Temm's claims relating to his association with or termination from LPL, Dale Temm's claims against LPL should be stayed along with William Temm's claims in favor of arbitration. Plaintiffs' opposition does not contend that Dale Temm's claims should be treated differently than William Temm's claims, so the stay will apply to both Plaintiffs.

The court does not see the need for an order compelling Plaintiffs to submit their claims to arbitration within any particular time, it being sufficient to note that, if the Plaintiffs wish to pursue claims against LPL relating to Mr. Temm's association with or termination from LPL, they must do so pursuant to section 7(C), and cannot do so in this case. A stay, rather than dismissal, of Plaintiffs' claims against LPL will provide Plaintiffs and LPL with a forum for seeking to vacate, confirm and/or enforce any arbitration award, and also to obtain any judicial process needed in the course of arbitration.

2. *Plaintiffs' Motion for Expedited Discovery, Depositions and Interrogatories*

Based on Mr. Temm's illness and limited life expectancy, Plaintiffs have moved for a scheduling order in this case that expedites the discovery process. Their motion and proposed order do not propose any specific schedule, but note that they wish to schedule Mr. Temm's own deposition forthwith. Defendants have opposed the motion.

In the court's view, any party, including but not limited to the Plaintiffs, can schedule and take Mr. Temm's deposition at any time. On the other hand, Defendants have a valid argument that they should not be required to take his

9

deposition until after they have taken other discovery. It is common for parties to pursue discovery under Rules 33 and 34 of the Maine Rules of Civil Procedure before pursuing depositions upon oral examination under Rule 30.

However, the fact that Defendants have a legitimate reason to defer taking Mr. Temm's deposition until after taking other discovery is not a reason to preclude Plaintiffs from perpetuating his testimony now, assuming, as the allegations suggest, that it needs to be perpetuated now.

Rule 30(a) of the Maine Rules of Civil Procedure allows "*a party*" to notice and take the deposition of "any person, including *a party*" (emphasis added). In addition, Rule 27, the civil rule regarding perpetuation of testimony applies only before any action is commenced and during the pendency of an appeal, and does not apply while an action is pending in the trial court, *see* M.R. Civ. P. 27(a), 27(b). This fact, in and of itself, suggests that the civil rules do not limit a party's ability to notice and take its own deposition in the ordinary course of discovery.

Even if a party needs to make some additional showing of need to justify taking its own deposition in the course of discovery, akin to the showing required to perpetuate testimony before an action under Rule 27(a)(1), Plaintiffs' allegations regarding Mr. Temm's limited life expectancy are enough, given that none of the Defendants disputes them. Defendants do claim Plaintiffs could have brought this case sooner than they did and cannot now justify expediting discovery on the basis of their own delay. In the court's view, this contention, at least as it relates to Mr. Temm's own deposition, misses the point. Moreover, if Plaintiffs choose to notice and take Mr. Temm's deposition now, the Defendants

10

are not necessarily precluded from taking his deposition later, assuming it can be taken.

Accordingly, Plaintiffs' Motion will be granted, to the extent of permitting Mr. Temm's deposition to be noticed and taken by any party at any time pursuant to the requirements of the relevant civil rules, and also to the extent a scheduling order regarding other discovery that the court will issue promptly after conferring with counsel. This Order does not presuppose any ruling on the pending motions of the Defendants other than LPL, and is intended simply to assure that the action proceeds unless the courts that it should not proceed. Also, in light of the stay order regarding Plaintiffs' claims against LPL, any discovery taken by any party against LPL is limited to the discovery that parties may take from non-parties, and cannot include discovery available only against other parties, such as interrogatories.

IT IS HEREBY ORDERED:

1. Defendant LPL Financial LLC's Motion to Stay Proceedings and Compel Arbitration is granted in part. All proceedings involving Plaintiffs' claims against Defendant LPL Financial LLC are hereby stayed in favor of arbitration pursuant to section 7(C) of the Representative Agreement between Plaintiff William Temm and Defendant LPL Financial LLC. This stay does not preclude the taking of discovery from LPL for purposes of this case, to the extent indicated above.

Counsel for either Plaintiffs or LPL will file a report in writing to the court on the status of arbitration proceedings by September 1, 2016, and at 180-day intervals thereafter so long as the stay remains in force.

11

2. Plaintiffs' Motion for Expedited Discovery, Depositions and Interrogatories is granted. Counsel for parties other than Defendant LPL Financial LLC are requested to confer regarding a proposed schedule for discovery, and to submit either joint or separate proposed scheduling orders, including an electronic copy in Word format via e-mail to the Clerk. The Clerk will schedule a telephonic conference as soon as possible. The proposed order or orders should be filed and transmitted at least one day before the telephonic conference.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated April 15, 2016

_____
A. M. Horton, Justice

11

STATE OF MAINE

Cumberland, ss.

SUPERIOR COURT
STATE OF MAINE
Cumberland ss Clerk's Office

APR 29 2016

RECEIVED

WILLIAM TEMM and DALE TEMM

Plaintiffs

v.

Docket No.: PORSC-CV-16-0014

LPL FINANCIAL LLC, TRSS WEALTH MANAGEMENT LLC,
MICHAEL A. REED, BRUCE SAWYER, ANDREW C. STICKNEY
and THOMAS M. BRUNELLE,

Defendants

## ORDER ON MOTION TO DISMISS and
## MOTION TO STRIKE OR IN THE ALTERNATIVE TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

Defendants TRSS Wealth Management LLC, Michael Reed, Bruce Sawyer, Andrew

Stickney and Thomas Brunelle [collectively "the TRSS Defendants"] have filed a Motion to

Dismiss all counts of the Complaint filed by William and Dale Temm. Instead of responding to

the Motion with an opposition, the Plaintiffs filed an Amended Complaint, but did not file a

motion for leave to amend. Based on the absence of a motion to amend, the TRSS Defendants

have filed a Motion to Strike or In the Alternative, to Dismiss Plaintiffs' Amended Complaint.

Plaintiffs have filed a timely opposition to the latter motion, and the TRSS Defendants have

filed a reply memorandum. The court elects to decide both the Motion to Dismiss and the

Motion to Strike or In the Alternative, to Dismiss Plaintiffs' Amended Complaint without oral

argument, *see* M.R. Civ. P. 7(b)(7).

*Motion to Strike*

The premise of the TRSS Defendants' Motion to Strike is that the Plaintiffs were

required to file a motion for leave to amend their Complaint pursuant to Rule 15(a) of the

Maine Rules of Civil Procedure, because the TRSS Defendants had responded to the Complaint

with their Rule 12(b)(6) motion to dismiss. Rule 15(a), in pertinent part, provides that "[a]

1

party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . ."

The question raised by the TRSS Defendants' Motion to Strike is whether their motion to dismiss is a "responsive pleading" for purposes of Rule 15(a). The Law Court has not addressed this issue. This court concludes that a motion is not a pleading for purposes of Rule 15(a) of the Maine civil rules. The Maine civil rules themselves differentiate between motions and pleadings. Rule 7(a) enumerates the pleadings allowed, without including any motions in the list. Separately, Rule 7(b) prescribes the form and procedure for motions. Rule 11(a) requires "every pleading and motion" of a represented party to be signed by an attorney of record, thereby confirming that motions are not pleadings. The counterpart federal rule to Rule 15(a) makes the distinction explicit by referring to both pleadings and Rule 12 motions. *See* Fed. R. Civ. P. 15(a).

Because Plaintiffs have not previously amended their complaint, and because the TRSS Defendants have not filed a "responsive pleading" for purposes of Rule 15(a), Plaintiffs were entitled to amend their Complaint as a matter of course, and the TRSS Defendants' Motion to Strike must be denied. Moreover, because the Amended Complaint has superseded the original Complaint, the TRSS Defendants' Motion to Dismiss will be dismissed as moot.

*Motion to Dismiss Amended Complaint*

The TRSS Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is brought under Rule 12(b)(6). It seeks dismissal of all counts of the Amended Complaint pertaining to them. On its face, the Amended Complaint asserts claims against one or all of the TRSS Defendants in Count II (breach of contract); Count IV (breach of fiduciary duty); Count VI (intentional infliction of emotional distress); Count VIII (interference with contractual or other advantageous economic relations); Count IX (invasion of privacy); Count X (misappropriation

2

of trade secrets); Count XI (loss of consortium), and Count XII (breach of contract against Thomas Brunelle). The other counts assert claims against Defendant LPL Financial, LLC only and have been addressed in a separate order.

The standard of review applicable to a Rule 12(b)(6) motion to dismiss calls for the court to determine whether the pleading to which the motion is directed, viewed in a light most favorable to the non-moving party, states any cognizable claim for relief. *See Town of Eddington v. University of Maine Foundation,* 2007 ME 74, ¶ 5, 926 A.2d 183, 184; *Heber v. Lucerne–in–Me. Vill. Corp.,* 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066. Under this standard, most of the TRSS Defendants' arguments fail, because they assume a certain view of the facts and therefore would be better deferred to the summary judgment phase.

The court's rulings on the motion, in terms of specific counts of the Amended Complaint is as follows:

Count II (breach of contract): Plaintiff William Temm's breach of contract claim against all TRSS Defendants other than Thomas Brunelle asserts that those Defendants have breached their obligations under the Operating Agreement of TRSS Wealth Management, LLC attached as Exhibit 1 to the Amended Complaint.[1] Defendants respond by noting that the attached exhibit is unsigned and therefore assert a statute of frauds defense. To this defense, Plaintiffs respond that a signed original of the Operating Agreement exists and they will seek to obtain it in discovery. Plaintiffs have the better part of the argument for a variety of reasons:

- Plaintiffs are entitled to take discovery on the existence of a signed contract

- part performance, which Plaintiffs are clearly alleging, is a well-recognized exception to the Statute of Frauds

---

[1] The Operating Agreement is integral to the Amended Complaint and therefore may be considered in connection with a Rule 12(b)(6) motion without converting the motion into one for summary judgment, *see Moody v. State Liquor and Lottery Commission,* 2004 ME 20, ¶ 10, 843 A.2d 43, 48.

3

Defendants also go on to argue that Plaintiff does not allege any actual breach of contract, but this depends on their view of the underlying facts, namely that they made a valid offer to buy his interest and he turned it down.

The Motion to Dismiss is denied as to Count II (breach of contract).

Count IV (breach of fiduciary duty): Count IV is also asserted against all TRSS Defendants other than Mr. Brunelle. Defendants argue that the Amended Complaint fails to allege a cognizable breach of fiduciary duty claim, based on much the same reasoning as in their objection to Count II (breach of contract). However, article 6.7 of the Operating Agreement attached to the Amended Complaint, titled *Fiduciary Duty; Devotion of Time; Compensation;* seems clearly intended to impose fiduciary duties on each Member toward the others.

The Motion to Dismiss will be denied as to Count IV.

Count VI (intentional infliction of emotional distress): Count VI asserts a claim for intentional infliction of emotional distress (IIED) against the TRSS Defendants other than Mr. Brunelle. To prevail on an IIED claim, a plaintiff must prove the following elements:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [the defendant's] conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community:

(3) the actions of the defendant caused the plaintiffs emotional distress; and

(4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Lyman v. Huber,* 2010 ME 139, ¶ 15, 10 A.3d 707, *citing Curtis v. Porter,* 2001 ME 158, ¶ 10, 784 A.2d 18.). Specifically, the Plaintiffs claim that those Defendants failed to provide him with a buy-out offer in a reasonable time; locked him out of the office and limited his access to his client files; disclosed confidential medical information to other TRSS employees, clients and

4

others; used his password to access computerized client data files; misrepresented his health situation to clients.

Recent Law Court decisions have endorsed the trial court's role as gatekeeper regarding IIED claims, meaning to evaluate an IIED claim to determine whether the facts alleged could reasonably justify a verdict for the plaintiff.

> In the context of an IIED claim, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so. Thus, while the jury must determine whether the elements of the tort were in fact satisfied, the court must first determine whether, as a matter of law, the facts alleged are sufficient to satisfy the elements.
>
> *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, P16, 711 A.2d 842, 847 (internal citations and quotations omitted).

The facts alleged in Plaintiffs' Amended Complaint cannot reasonably be interpreted to justify a finding that the TRSS Defendants' actions were "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." Read liberally in the Plaintiffs' favor as it must be for purposes of Rule 12(b)(6), the Amended Complaint alleges that the TRSS Defendants engaged in bad and distressing behavior in connection with Mr. Temm's effort to take his clients to a competing firm—by locking him out, trying to prevent him from taking clients with him, spreading misinformation about him to clients and others, and accessing his client files with his password. But lockouts and competing over clients, and more nefarious tactics like accessing private data and spreading rumors and misinformation about competitors are by no means unheard of in the context of the breakup of businesses, reprehensible though some of the tactics may be.

Viewing the allegations of the Amended Complaint in a light most favorable to Plaintiffs, the court concludes that no reasonable fact finder could find that the TRSS Defendants' alleged acts and omissions were so utterly intolerable, extreme, outrageous and

5

atrocious, and beyond the bounds of civilized behavior as to be sufficient to establish an IIED claim. The Motion to Dismiss will be granted as to Count VI of the Amended Complaint.

Count VIII (interference with contractual or other advantageous economic relations): The Amended Complaint alleges that the TRSS Defendants other than Mr. Brunelle committed tortious interference by preventing Mr. Temm from accessing client information and data and also by giving his clients false information about his health and future prospects. These allegations are sufficiently specific to allege tortious interference through fraud, at least.

Count IX (invasion of privacy) and Count X (misappropriation of trade secrets); Count XI (loss of consortium), and Count XII (breach of contract against Thomas Brunelle). The allegations in the Amended Complaint are sufficient to state cognizable claims for relief on the remaining four counts. The Defendants' arguments against the sufficiency of Counts IX, X and XI all presuppose a certain view of the underlying facts and thus should be reserved for summary judgment or trial. Defendants' argument as to Count XII is lacking in any merit.

For the reasons stated, it is ORDERED AS FOLLOWS:

1. The Motion to Dismiss filed by Defendants TRSS Wealth Management LLC, Michael Reed, Bruce Sawyer, Andrew Stickney and Thomas Brunelle as to the Complaint is dismissed as moot.

2. The Motion to Strike or In the Alternative To Dismiss Plaintiffs' Amended Complaint filed by Defendants TRSS Wealth Management LLC, Michael Reed, Bruce Sawyer, Andrew Stickney and Thomas Brunelle is granted with respect to Count VI of the Amended Complaint, and is otherwise denied. Count VI of the Amended Complaint is dismissed.

3. Defendants TRSS Wealth Management LLC, Michael Reed, Bruce Sawyer, Andrew Stickney and Thomas Brunelle will file a responsive pleading within the time prescribed by M.R. Civ. P. 12(a).

6

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order in the docket by reference.

Dated April 29, 2016

A. M. Horton
Justice, Business and Consumer Court