2009 ME 99

F. James WHALEN

v.

DOWN EAST COMMUNITY HOSPITAL.

Supreme Judicial Court of Maine.

Argued: May 20, 2009.
Decided: Sept. 15, 2009.

Robert S. Frank, Esq. (orally), Harvey & Frank, Portland, ME, for Down East Community Hospital.

Karen Frink Wolf, Esq. (orally), Sean D. Magenis, Esq., Friedman Gathwaite Wolf & Leavitt, Portland, ME, for F. James Whalen.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, and GORMAN, JJ., and CLIFFORD, A.R.J.*

MEAD, J.

[¶ 1] Down East Community Hospital (DECH) appeals from a judgment of the Superior Court (Washington County, *Cuddy, J.*) entering final judgment for Dr. F. James Whalen on his breach of contract claim against the hospital, and granting Dr. Whalen permanent injunctive relief barring the hospital from denying him reappointment to its medical staff. Because the evidence does not support a finding that DECH breached its contract with Dr. Whalen, we vacate both the judgment and the injunctive relief resulting from it.

---

\* Clifford, J., sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice,

## I. BACKGROUND

[¶ 2] Dr. Whalen is an orthopedic surgeon who has been a member of the medical staff at DECH since 1979. The medical staff, composed of doctors who are privileged to attend patients at the hospital, is governed by written bylaws. While the precise requirements of the bylaws concerning the duration of appointments to the medical staff are at the heart of this appeal, the parties agree that no appointment may last longer than two years, after which the member must apply for reappointment.

[¶ 3] In 2006, Dr. Whalen applied for a two-year reappointment to the medical staff. He was instead given a provisional one-year appointment, expiring in November 2007, based on a low "profiling assessment" score. He did not contest that decision. In 2007, Dr. Whalen again applied for reappointment. His relationship with the hospital at that point had not been problem-free. Among other incidents, the medical staff was investigating whether Dr. Whalen had improperly disclosed protected peer review information concerning a colleague to an investigator for the Maine Attorney General's Office.

[¶ 4] With that investigation not yet complete, the medical staff held a meeting on December 10, 2007, attended by Dr. Whalen, at which a three-month appointment pending the conclusion of the investigation was discussed. The credentials committee of the medical staff recommended, and the hospital board of trustees eventually approved, an appointment expiring February 29, 2008. A letter sent to Dr. Whalen on December 13, 2007, by the DECH Chief Executive Officer read, in part:

was authorized to continue his participation in his capacity of Active Retired Justice.

Having successfully completed your Provisional Year as a member of the Active Medical Staff of Down East Community Hospital, I am pleased to inform you that the Board of Trustees at their December 12, 2007 meeting ratified the Credentials Committee recommendation of your advancement from Provisional to regular Active Staff for a period ending February 29, 2008. Your privileges were approved as requested.

[¶ 5] On February 26, 2008, with the investigation still not complete, the president of the medical staff sent an electronic ballot to all medical staff members, requesting a vote on a second reappointment for Dr. Whalen, for one month. Following that vote, Dr. Whalen was sent another letter by the CEO, reading in part:

This letter is notification that your reappointment to the Active Medical Staff of Down East Community Hospital received approval by the hospital's Board of Trustees at their February 27, 2008 meeting. Your reappointment is effective for one month beginning March 1, 2008 and continuing through March 31, 2008.

[¶ 6] On February 27, 2008, the trustees concluded the investigation into the disclosure of peer review information by imposing a sixty-day suspension of Dr. Whalen's privileges, effective March 8, 2008. On March 4, the credentials committee of the medical staff met to consider the issue of Dr. Whalen's reappointment past March 31, the date on which his latest reappointment was set to expire. The credentials committee agreed not to recommend Dr. Whalen for further reappointment. The medical staff executive committee, comprising all members of the medical staff, including Dr. Whalen, accepted the credentials committee's recom-

mendation. At Dr. Whalen's request and pursuant to the bylaws, a hearing was held at which Dr. Whalen testified and was represented by counsel. The hearing committee supported the recommendation of the executive committee. Following an unsuccessful appeal to the appellate review committee of the board of trustees, the full board denied Dr. Whalen's request for reappointment and terminated his privileges effective August 15, 2008.

[¶ 7] On August 13, 2008, Dr. Whalen filed a two-count complaint in the Superior Court, alleging breach of contract and interference with an advantageous economic relationship. The complaint requested both damages and injunctive relief. The court granted Dr. Whalen's request for a temporary restraining order, enjoining DECH from enforcing its decision to deny his reappointment, and also from reporting that decision to any regulatory body. Following a hearing held shortly thereafter, the court granted Dr. Whalen's motion for a preliminary injunction and continued the terms of the TRO. In its key finding, the court concluded that Dr. Whalen had been reappointed to full active staff membership in December 2007, and that the medical staff bylaws did not allow for such appointments to be for less than two years.

[¶ 8] On February 9, 2009, the court entered judgment for Dr. Whalen on his breach of contract claim and made the terms of its preliminary injunction permanent. At the parties' suggestion, the court directed the entry of a final judgment on that count pursuant to M.R. Civ. P. 54(b)(1),[1] and stayed all further proceedings. This appeal followed.

## II. DISCUSSION

▉ [¶ 9] As an initial matter, the Superior Court correctly found that the by-

---

1. The rule provides that "when more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims...."

laws created a contract between DECH and Dr. Whalen. *See Morison v. Wilson Lake Country Club*, 2005 ME 71, ¶ 20, 874 A.2d 885, 890–91 (stating that reasonable bylaws "are a valid enforceable contract between members and the association" (quotation marks omitted)); *Bartley v. E. Me. Med. Ctr.*, 617 A.2d 1020, 1021 (Me. 1992) ("We agree . . . that the bylaws of a private medical center may constitute an enforceable contract between the medical center and its staff physicians."); *Gashgai v. Me. Med. Ass'n*, 350 A.2d 571, 575 (Me. 1976) (stating that the bylaws of the Maine Medical Association "are contractual terms cognizable, and enforceable, by a Court in accordance with the principles of contract law").

■ [¶ 10] There are two seemingly contradictory provisions in the DECH medical staff bylaws relating to the length of reappointments. In its decision granting Dr. Whalen's request for a preliminary injunction, the Superior Court found that they created an ambiguity that should be construed against the hospital as the drafter. Article III, § 3(b) of the bylaws provides:

> Initial appointments shall be for a provisionary period of one year from the date of appointment. Reappointments shall be for a period of not more than two Medical Staff years.

Article V, § 2(h) of the bylaws states that:

> Appointments shall be for two years, except for provisional appointments which shall be for a period of one year and may be renewed for a period of one year. After a maximum of two years provisional appointment the member must be advanced to active membership, be reduced to one of the other membership categories, or be dropped from the staff. . . . Temporary appointments may not be used to extend membership or privileges beyond two years.

[¶ 11] Examining the clauses "[r]eappointments shall be for a period of *not more than* two Medical Staff years," and "[a]ppointments *shall be for* two years," the court determined that the bylaws provided "no insight as to which was intended to control in defining the limits of reappointment, i.e. was it to be a maximum of 2 years or a flat 2 years?" (Emphasis added.)

[¶ 12] These two provisions of the bylaws can be reconciled by considering a third provision. Article IV, § 8(a) of the bylaws provides, in part:

> All initial appointments to any category of the Medical and Professional Staff shall be provisional for twelve (12) months. Reappointments to provisional membership may not exceed two full Medical Staff years, at which time the failure to advance an appointee from provisional to regular staff status shall be deemed a termination of his/her staff appointment.

[¶ 13] Viewing the three provisions together, article III, § 3(b) is amplified by article IV, § 8(a):

> Initial appointments shall be for a provisionary period of one year from the date of appointment. Reappointments shall be for a period of not more than two Medical Staff years.
>
> All initial appointments . . . shall be provisional for twelve months. Reappointments to provisional membership may not exceed two full Medical Staff years. . . .

[¶ 14] The logical construction of these two provisions is that the word "reappointments" in article III, § 3(b) means reappointments to provisional membership, not reappointments to active staff membership. Article V, § 2(h) then differentiates between regular and provisional appointments:

Appointments shall be for two years, except for provisional appointments which shall be for a period of one year and may be renewed for a period of one year.

[¶ 15] Whether terms in a contract are ambiguous is a question of law that we review de novo. *Dickey v. Vermette*, 2008 ME 179, ¶ 37, 960 A.2d 1178, 1187. Because these three provisions of the bylaws are not ambiguous when properly viewed together, their interpretation is likewise a question of law. *See Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 9, 828 A.2d 210, 213; *Med. Care Dev. v. Bryler Corp.*, 634 A.2d 1296, 1298 n. 4 (Me.1993); *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me.1996) ("A contract should be construed viewing it as a whole. An interpretation that would render any particular provision in the contract meaningless should be avoided."); *Bartley*, 617 A.2d at 1022 (stating that a contract must be construed viewing it as a whole). The Superior Court erred in finding that an ambiguity in the bylaws created a presumption in favor of Dr. Whalen and against DECH.

[¶ 16] Construing the bylaws provisions just discussed, provisional appointments at DECH are for one year, renewable for not more than one additional year, while regular appointments are for two years. In 2006, Dr. Whalen was given a provisional appointment for one year expiring in November 2007. He accepted that appointment and did not challenge its designation as provisional. According to the bylaws, the hospital had the option to renew Dr. Whalen's provisional appointment for a period ending not later than November 2008.

[¶ 17] Once the presumption against DECH as the drafter of the bylaws is set aside, and notwithstanding the somewhat contradictory letters that Dr. Whalen received from the hospital CEO, the record supports a finding that DECH acted to extend his provisional appointment in December 2007 and again in February 2008, and that Dr. Whalen knew that to be the case. Although the two letters advising Dr. Whalen of his reappointments each referred to membership on the active medical staff, they also stated unambiguously that the terms of reappointment ended on February 29, 2008, and March 31, 2008, respectively. If Dr. Whalen had actually received a regular, two-year reappointment, the first letter would have specified an end date of December 2009, and the second would have been unnecessary. Reading each letter as a whole, rather than isolating particular phrases within them, they announced, albeit inartfully, that Dr. Whalen had privileges at DECH, but for a limited time—in other words, they announced extensions of his provisional appointment.

[¶ 18] Supporting this conclusion, at different hearings the president of the medical staff and a member of the medical staff credentials committee each testified that Dr. Whalen attended the December 10, 2007, meeting at which the staff discussed a three-month extension of his provisional appointment in order to allow the peer review disclosure investigation to conclude. The minutes of that meeting list Dr. Whalen's case in the category of "Provisional Year Review"; he is not listed with two other physicians in the category of "Reappointments; Active."

[¶ 19] Finally, the terms of his provisional appointment in 2006 put Dr. Whalen on notice that he would be subject to heightened scrutiny before being given a regular reappointment. In a letter dated November 21, 2006, the hospital CEO notified Dr. Whalen that "during the term of your provisional reappointment, the Medical Staff will review any matters involving your Medical Staff membership that may

be related to this [low profiling assessment] score, including any negative actions from the Board of Licensure, any negative behavioral actions, or any actions based on quality." That backdrop further reinforces a conclusion that the three-month and one-month appointments were extensions of the ongoing provisional process, not belated attempts to rescind a regular, two-year appointment.

[¶ 20] Because we conclude that DECH acted pursuant to the bylaws in granting short-term extensions of Dr. Whalen's existing provisional appointment, the Superior Court erred in entering judgment for Dr. Whalen on his breach of contract claim. As we are vacating the judgment, we also vacate the permanent injunctive relief resulting from it. *See Windham Land Trust v. Jeffords*, 2009 ME 29, ¶ 41, 967 A.2d 690, 702 (stating that party seeking a permanent injunction must show, *inter alia*, that he succeeds on the merits of his claim).

The entry is:

Judgment for plaintiff on breach of contract count vacated. Order granting permanent injunctive relief vacated. Remanded for entry of judgment for the defendant on breach of contract count, and for further proceedings consistent with this opinion.