MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 59
Docket:        BCD-12-269
Argued:        April 10, 2013
Decided:       May 30, 2013
Revised:       June 20, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, <u>MEAD</u>, GORMAN, and
               JABAR, JJ.


JOHN E. McDONALD JR.

v.

SCITEC, INC., et al.[*]


MEAD, J.

[¶1]  John E. McDonald Jr. appeals from a judgment entered in the Business and Consumer Docket (*Nivison, J.*) in favor of Scitec, Inc., on McDonald's complaint alleging that Scitec continued to owe him commissions on sales that it made to an established customer, a company known as Avaya, after Scitec unilaterally terminated McDonald's commission agreement.  The court's judgment (1) denied McDonald's motion, made pursuant to M.R. Civ. P. 50(b), for judgment as a matter of law following a jury verdict in favor of Scitec on the issue of whether Scitec was required to continue paying McDonald Avaya-derived commissions after terminating the agreement; and (2) found in favor of Scitec on McDonald's statutory claim that commissions were due him pursuant to the Illinois

---

[*]  This opinion replaces *McDonald v. Scitec, Inc.*, 2013 ME 52.

Sales Representative Act (ISRA), 820 Ill. Comp. Stat. Ann. §§ 120/0.01-3 (West, Westlaw through P.A. 98-7 of the 2013 Reg. Sess.). Scitec asserts that McDonald's right to commissions ended when it unilaterally terminated the agreement.

[¶2] We conclude that the agreement unambiguously requires Scitec to continue paying commissions to McDonald on sales it makes to Avaya for as long as those sales continue, unless McDonald's future conduct triggers one of the explicit provisions in the agreement that allows Scitec to stop paying commissions. For that reason, we must vacate the court's order denying McDonald's M.R. Civ. P. 50(a) motion for judgment as a matter of law made at the close of the evidence at trial.[1]

## I. BACKGROUND

[¶3] The historical facts are not disputed. Scitec, Inc., founded by Dr. Bing Sun in 1993 and owned solely by him, is a major supplier of hotel telephones. In

---

[1] M.R. Civ. P. 50(a) provides, in part:

> In an action tried to a jury, a motion for judgment as a matter of law on any claim may be made at any time before submission of the case to the jury. . . . The court may grant the motion as to any claim if the court determines that, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that under the substantive law is an essential element of the claim.

April 2002, McDonald and Scitec[2] entered into a commission agreement. Its central provision specified that when Scitec sold its products to "contacts" that McDonald introduced to Scitec and Scitec pre-approved, McDonald would be paid a commission:

> The Company shall pay McDonald an amount equal to five percent (5%) of the product sales only . . . paid to the Company by the Contacts, up to the gross amount of $5,000,000, paid to the Company within the prior twelve month period. For all gross amounts over $5,000,000 paid to the Company by the Contacts, within the prior twelve-month period, the Company shall pay to McDonald four percent (4%) of such amounts. . . . Payment for gross amounts paid to the Company by any Contacts shall continue until the earlier of five (5) years after this Agreement is terminated upon mutual agreement or the Contact receives any amounts from a competitor of the Company as the result of an introduction by McDonald to the competitor for a product that McDonald has introduced for the Company.

A separate confidentiality provision also provided a condition pursuant to which the Company's obligation to pay McDonald would cease:

> A violation of this Section [making certain information confidential] shall give the Company the right to immediately terminate this Agreement with McDonald and to make no payment on any sale made after the termination of this Agreement.

[¶4] Scitec does not contend that McDonald violated either the noncompete or confidentiality clauses in these provisions. The agreement also contains a survival clause, which states that the commissions and confidentiality clauses

---

[2] Scitec, Inc., eventually merged with another company, Telematrix, Inc., and then changed its name to Cetis, Inc. All three entities were named as defendants in McDonald's complaint. This opinion refers to them collectively as Scitec.

4

"shall survive any termination or expiration of this Agreement." A choice of law clause provides that the agreement is governed by Illinois law.[3]

[¶5] The "contact" relevant to this case is Avaya. Pursuant to the agreement, from January 2004 through Scitec's termination of the agreement on April 8, 2010, Scitec paid McDonald $562,086.19 in commissions on its sales to Avaya. Scitec terminated the agreement on the day that McDonald served it with a complaint claiming that Scitec owed him commissions on sales it made to another company.[4] Although Scitec continued to sell to Avaya after terminating the agreement, it has not paid McDonald any commissions on those sales. The parties stipulated at trial that the unpaid commissions, if owed, would amount to approximately $83,201.25, plus interest.

[¶6] After Scitec terminated the agreement, McDonald amended his complaint to allege six counts; only Count III, claiming breach of contract for failure to pay commissions, is relevant to our discussion here. In October 2011, the court denied Scitec's motion for summary judgment on Count III. On December 12 and 14, 2011, the case was tried to a jury on the issue of whether

---

[3] The parties agree that their contractual relationship is controlled by Illinois law. Accordingly, we apply Illinois law to resolve substantive issues, and Maine law to procedural matters. *See Stenzel v. Dell, Inc.*, 2005 ME 37, ¶ 7, 870 A.2d 133 ("When a contract contains a choice of law provision, we generally will interpret the contract under the chosen state's laws.").

[4] Scitec's decision to terminate its contractual relationship with McDonald was based solely upon Scitec's owner taking offense at the fact that McDonald commenced a lawsuit against the company for commissions in a transaction unrelated to this matter.

McDonald was due commissions resulting from Scitec's post-termination sales to Avaya.

[¶7]  At the close of the evidence, McDonald moved for judgment as a matter of law on Count III pursuant to M.R. Civ. P. 50(a).  The court denied the motion after finding that the agreement was ambiguous, and that it was for the jury to decide what the parties intended concerning ongoing commissions in the event of a unilateral termination.  On the single issue before it, the jury answered "no" to the question: "Has [McDonald] proved by a preponderance of the evidence that [Scitec] is required under the terms of the parties' contract to pay [McDonald] commissions on Avaya sales made after the termination of the parties' contract?"  Based on the jury's verdict the court entered judgment for Scitec on Count III.

[¶8]  McDonald filed a post-trial motion pursuant to M.R. Civ. P. 50(b), asking the court to set aside the jury verdict as unsupported by the evidence and to enter judgment in his favor on Count III.  The court denied the motion, and this appeal followed.

## II.  DISCUSSION

[¶9]  "We review de novo the denial of a motion for judgment as a matter of law pursuant to M.R. Civ. P. 50." *State v. Price-Rite Fuel, Inc.*, 2011 ME 76, ¶ 11, 24 A.3d 81.  The threshold issue in this appeal is whether the commission agreement is ambiguous concerning whether McDonald was due commissions on

6

sales made by Scitec to Avaya after Scitec unilaterally terminated the agreement. If the agreement is unambiguous, meaning that it is not "reasonably susceptible to different interpretations," then we review the agreement "de novo and interpret it according to the plain meaning of the language used." *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800 (alteration and quotation marks omitted); *see Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) (same).

[¶10]  We conclude that the agreement is not ambiguous with regard to commissions due and owing on completed transactions.  The commissions clause is clear and straightforward—McDonald is due commissions on ongoing sales made by Scitec to Avaya unless the agreement was terminated by mutual agreement or McDonald had violated the noncompete or confidentiality clauses, neither of which occurred.  Because the agreement is unambiguous concerning the issue decided by the jury, the trial court erred in assigning to the jury the task of interpreting the agreement in light of the parties' intent instead of applying the agreement's plain language and granting McDonald's motion for judgment as a matter of law at the close of the evidence.[5]  *See Whalen v. Down East Cmty. Hosp.*, 2009 ME 99, ¶ 15, 980 A.2d 1252 (stating that the interpretation of unambiguous contract provisions is a question of law); *Thompson*, 948 N.E.2d at 47 (stating that

---

[5]  We emphasize that we do not look behind the jury's verdict to reach this result; rather, we conclude that the question of what the parties intended in the event of Scitec's unilateral termination of the agreement should not have been submitted to the jury because the language of the agreement is unambiguous as to the result in that situation.

a court can consider extrinsic evidence of the parties' intent if contract language is ambiguous).

[¶11] Scitec argues that the commissions clause is ambiguous because it addresses what would occur if the agreement was terminated by mutual consent, but says nothing about what would occur if it was terminated unilaterally. The contract, however, is *not* silent on this issue. The commissions clause states that Scitec "shall pay McDonald" commissions on its ongoing sales to Avaya, and that those payments "shall continue" unless one of two stated events occurred. Neither did. To further emphasize this point, the contract explicitly provides that the commissions clause "shall survive any termination or expiration of this Agreement."

[¶12] Scitec further argues that the separate confidentiality provision applies in the case of a mutual termination of the agreement—in which case payments for completed transactions would continue in effect for five years—but would be rendered a nullity in the case of a unilateral termination because McDonald's right to commissions would immediately end. In fact, the confidentiality clause supports McDonald's position because it demonstrates that the parties knew perfectly well how to terminate ongoing commissions in a specific situation when they so chose—"[a] violation of this [confidentiality] Section shall give the Company the right . . . to make no payment on any sale made after the termination

8

of this Agreement"—but did not employ similar language in the case of a unilateral termination of the agreement for other reasons. *See Thompson*, 948 N.E.2d at 47, 51 (stating that "[a] contract must be construed as a whole, viewing each provision in light of the other provisions"; also stating that "there is a presumption against provisions that easily could have been included in a contract but were not"). The commissions clause anticipates McDonald's ongoing entitlement to commissions in the case of a unilateral termination, and the agreement protects Scitec in that event by penalizing McDonald for a breach of confidentiality for as long as that entitlement lasts.

[¶13] Scitec's assertion that the survival clause does not create an obligation on its own to pay ongoing commissions similarly misses the mark. Like the commissions clause, the language of the survival provision is straightforward: "Section[] 2 [the commissions clause] . . . shall survive any termination . . . of this Agreement." As we have concluded, the commissions clause entitles McDonald to ongoing Avaya-derived commissions, and the survival clause plainly states that that obligation survives "any termination" of the agreement, including Scitec's unilateral termination, unless one of the two events set out in the commissions clause occurs. Because neither event occurred, McDonald's entitlement to commissions survives.

[¶14] Finally, Scitec asserts that requiring it to pay ongoing commissions to McDonald violates the Illinois rule concerning contracts of indefinite duration. Pursuant to Illinois law, "Contracts of indefinite duration are terminable at the will of either party." *Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998). Scitec's argument, however, fails to appreciate the distinction between the agreement itself and the obligation to pay commissions created by the agreement.

[¶15] It is not contested that Scitec was free to unilaterally terminate the open-ended agreement prospectively, thereby foreclosing the possibility that McDonald would become entitled to commissions on Scitec's future sales to customers who were not yet approved "contacts." What Scitec could not do, under Illinois law or by the agreement's plain terms, is unilaterally end McDonald's entitlement to commissions based on performance rendered before the agreement was terminated, unless (1) McDonald violated the noncompete or confidentiality clauses, or (2) Scitec stopped selling its products to Avaya.

[¶16] *Jespersen* is illustrative of the principle that contracts of indefinite duration are terminable at will concerning *prospective* performance. In that case, an auto parts dealer's distribution agreement was unilaterally terminated without cause when the company that entered into the agreement was purchased by another company. *Id.* at 1015-16. The Illinois Supreme Court held that because the

agreement provided that it "shall continue in force indefinitely" it was an "agreement at will, which means [the parties] could terminate the agreement for any reason or no reason without committing a breach of contract." *Id.* at 1016, 1017 (quotation marks omitted). The Court explained its reasoning by observing that

> perpetual contracts are disfavored. "Forever" is a long time and few commercial concerns remain viable for even a decade. Advances in technology, changes in consumer taste and competition mean that once[-]profitable businesses perish—regularly. Today's fashion will tomorrow or the next day inevitability fall the way of the buggy whip, the eight-track tape and the leisure suit. Men and women of commerce know this intuitively and achieve the flexibility needed to respond to market demands by entering into agreements terminable at will.

*Id.* at 1017 (citation omitted).

[¶17]  This rationale underpinning the Illinois rule concerning perpetual contracts is fully applicable to the Scitec-McDonald agreement looking forward, in that either party was free to terminate their agreement of indefinite duration when it no longer suited their interests—the law would allow neither to be locked into the agreement forever. Looking *backward*, however, to transactions wherein one party has fully performed and all that remains is for the other party to tender payments as they become due, the *Jespersen* rationale has no applicability.

[¶18]  Moreover, beyond these principles of Illinois law, given the plain language of the agreement and the absence of an explicit provision to the contrary,

we do not construe the agreement to allow Scitec to stop paying commissions at its whim after McDonald fully performed his obligation to make an introduction to Scitec that resulted in commissionable sales.[6] The commissions clause here is akin to other common types of contracts that may be terminated by a party *prospectively*, leaving intact that party's obligation to pay for *pre-termination performance*. Here, McDonald had already done all that the agreement required him to do to earn commissions on Scitec's sales to Avaya, as evidenced by the fact that Scitec had been paying those commissions for six years prior to terminating the agreement.

[¶19] Because the commission agreement unambiguously required Scitec to pay commissions to McDonald on sales it made to Avaya after Scitec unilaterally terminated the agreement, McDonald was entitled to judgment as a matter of law on his breach of contract claim. The trial court did not reach the merits of McDonald's ISRA claim after interpreting the agreement to the contrary; accordingly, we remand for a de novo determination of that claim in light of this opinion.

---

[6] Under Scitec's interpretation, it could have, after McDonald made the introduction to Avaya and the two companies agreed to purchase and sale terms, unilaterally terminated the agreement before any sales were completed, resulting in McDonald being entitled to no commissions at all after doing everything the agreement required him to do.

The entry is:

> Judgment as to Count III vacated. Remanded for entry of a judgment on Count III in favor of John E. McDonald Jr. in the amount of $83,201.25, plus interest as called for in the agreement. Judgment as to Count VI vacated; remanded for further proceedings consistent with this opinion.

**On the briefs:**

Michael J. Donlan, Esq., and Seth S. Coburn, Esq., Verrill Dana, LLP, Portland, for appellant John E. McDonald, Jr.

Randall B. Weill, Esq., and Jonathan G. Mermin, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellees Scitec, Inc., Telematrix, Inc., and Cetis, Inc.

**At oral argument:**

Michael J. Donlan, Esq., for appellant John E. McDonald, Jr.

Randall B. Weill, Esq., for appellees Scitec, Inc., Telematrix, Inc., and Cetis, Inc.

Business and Consumer Docket docket number CV-2010-37
FOR CLERK REFERENCE ONLY