ENTERED OCT 2 8 201.

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-13-44

*CUM-MMM-03-31-14*

|  |  |
|---|---|
| JONATHAN M. POUND, KRIS M. POUND, AND D & H INSURANCE, LLC, | ) ) ) ) |
|  | ) |
| Plaintiffs, | ) ) |
| v. | ) **Order** |
|  | ) (Defendants' Motion for |
| WEBER INSURANCE GROUP, LLC, WEBER INSURANCE GROUP, LLC, II, KAMRON KIMBALL, ROBERT KIMBALL, MARK COTE, TODD RUSSELL, ETHYL POTVIN, ANDREW DAIGLE, and SHELLEY JAMISON, | ) Partial Summary Judgment) ) ) ) ) ) ) ) |
|  | ) |
| Defendants | ) ) |

Defendants Weber Insurance Group, LLC (WIG), Weber Insurance Group, LLC, II (WIG, II), Kamron Kimball, Robert Kimball, Mark Cote, Todd Russell, Ethyl Potvin, Andrew Daigle, and Shelley Jamison move for partial summary judgment on two issues: 1) the degree of consensus among members required to approve a merger; and 2) the personal liability of the individual shareholders.[1] On the first issue, Defendants assert that only a simple majority vote was required to approve a merger, whereas Plaintiffs Jonathan M. Pound, Kris M. Pound, and D & H Insurance, LLC maintain a unanimous vote was required. On the latter issue, Defendants contend there has been no abuse of the corporate form; Plaintiffs maintain that issues of material fact regarding abuse of the corporate form preclude summary judgment on the personal liability issues.

---

[1] In their reply brief, Defendants clarify that they are not seeking summary judgment on Counts II and III outright; rather, they are seeking summary judgment only as to the effectiveness of the merger.

1

## FACTUAL BACKGROUND

WIG is a Maine limited liability company with a principal place of business in Lewiston, Maine.[2] The purpose of WIG is to allow insurance agencies to join a group so as to take advantage of pooled premiums, bulk advertising, and other benefits. WIG is composed of both shareholders and member agencies. As of March 13, 2013, WIG was comprised of nine shareholders and fourteen agency members. The nine shareholders as of March 31, 2013, were: Jonathan M. Pound, Kris M. Pound, Kamron Kimball, Robert Kimball, Mark Cote, Todd Russell, Ethyl Potvin, Andrew Daigle, and Shelley Jamison.

WIG is governed by a document entitled the "Limited Liability Company Agreement of Weber Insurance Group, LLC" (the Agreement), which was amended on September 1, 2011, in light of the enactment of Maine's new LLC Act (the Act), 31 M.R.S. §§ 1501-1693 (2013). Defendants assert that Jonathan Pound drafted the Agreement, but Plaintiffs assert that Attorney John Geismar "was instrumental in preparing the original operating agreement" of WIG.[3]

The provisions of the Agreement relevant to the present dispute concern the personal liability of members and the voting rights of the members. With respect to personal liability of WIG members, the agreement provides as follows:

- "No Shareholder shall be liable for the liabilities of the Company. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under this Agreement or the Act shall not be grounds for imposing personal liability on the Shareholders for liabilities of the Company." (Compl. Exh. A, art. IV, § 1.)

- "The Company shall indemnify the Officer(s) and make advances for expenses to the maximum extent permitted under the Act. The Company shall indemnify its employees and other agents to the fullest extent permitted by law, provided that such

---

[2] The parties dispute whether WIG is still in existence given the dispute about the merger. (*See* S.S.M.F. ¶¶ 1, 3, 6; O.S.M.F. ¶¶ 1, 3, 6.) Because WIG is a named defendant, this order refers to WIG as an ongoing concern, notwithstanding the dispute over its continued existence and does not reference this dispute again in the recitation of facts.

[3] Both statements of material fact are supported by the record citation. (*See* S.S.M.F. ¶ 7; O.S.M.F. ¶ 7.)

indemnification in any given situation is first approved by the Shareholders. The right to indemnification under this Section shall be fully vested with respect to any matter occurring while this section was in effect." (Compl. Exh. A, art. VI, § 10(b).)

With respect to the voting rights of the members, two provisions provide for a simple majority vote of the members:

- "Unless otherwise expressly provided herein, all actions and decisions of the Company shall be by majority vote of the Shareholders at a duly noticed Shareholder meeting, at which a quorum is present . . ." (Compl. Exh. A, art. V, § 1.)

- "If a quorum is present, a Majority Interest represented in person or by proxy at the meeting shall constitute the act of the Shareholders, unless the vote of a greater number is otherwise required by the Act, by the Certificate of Formation, or by this Agreement." (Compl. Exh. A, art. V, § 8.)

But, for dissolution or amendment of the Agreement, the Agreement explicitly requires a vote of 75% of the shareholder voting interests. According to Jonathan Pound, the Agreement was never intended to allow an event as significant as merger or expulsion of a member to be approved only by a majority vote, and those circumstances were never discussed with Attorney Geismar during the drafting of the Agreement.[4]

On March 15, 2013, Attorney Geismar sent a letter to the shareholders giving them notice of a shareholder meeting on March 27, 2013. The purpose of the meeting was to review and act on a proposal whereby WIG would merge with a new entity named WIG, II, with WIG, II being the surviving entity. The proposal was that WIG, II would be comprised of all the same shareholders and member agencies of WIG, with exception of any ownership interest of Plaintiffs Jonathan Pound and Kris Pound, who would be paid fair value for their shares in WIG. Plaintiffs deny that any payment has been made for their shares.

The meeting took place on March 27, 2013, at which meeting a majority of those present voted to approve the merger. Only Jonathan Pound and Kris Pound voted against the merger.

---

[4] Defendants object to the relevance of the statement but do not otherwise admit, deny, or qualify the statement of material fact. The statement is supported by the record citation. (A.S.M.F. ¶ 11; R.S.M.F. ¶ 11.)

A statement of merger of WIG and WIG, II was filed with the Maine Secretary of State on or about March 28, 2013, with an effective date of March 31, 2013. Plaintiffs assert that the merger did not provide an economic benefit to WIG or WIG, II and that WIG, II is now undercapitalized.[5]

The parties dispute whether the vote of 7 of 9 members was sufficient to approve the merger. At the meeting, the members also determined the fair market value of the shares was $35,000, but Plaintiffs dispute that value and claim it is too low.[6]

## PROCEDURAL BACKGROUND

Plaintiffs initiated this case on June 4, 2013, by filing an eight-count Verified Complaint and a motion for attachment in Franklin County Superior Court. Plaintiffs' causes of action generally fall into two categories: those attacking the legality of the merger based on a majority vote rather than a unanimous vote (Counts I, II, and III),[7] and those seeking damages for unpaid shares of WIG and commission growth payments after the merger (Counts IV, V, VI, and VII).[8] The case was transferred to the Business and Consumer Court on September 17, 2013. The Court (*Nivison, J.*) granted the motion for attachment on December 9, 2013, in the amount of $147,309.68 against WIG, II, which amount represents the value of the Pounds' WIG shares and certain payments owed to the Pounds. The present motion was filed on November 19, 2013. The Court held oral argument on February 28, 2014.

---

[5] Defendants object to the relevance and foundation of the statements but do not otherwise admit, deny, or qualify the statement of material fact. The statements are supported by the record citations. (A.S.M.F. ¶¶ 13-14.)

[6] Defendants object to the relevance and foundation of the statement but do not otherwise admit, deny, or qualify the statement of material fact. The statement is supported by the record citation. (A.S.M.F. ¶ 12.)

[7] These counts are: "Failure to Properly Approve Merger", i.e., breach of contract (Count I); breach of the covenant of good faith and fair dealing (Count II); breach of fiduciary duty (Count III). Counts II and III, however, encompass more issues than just the degree of consensus required to approve a merger.

[8] These counts are: conversion (Count IV); breach of contract related to valuation of shares (Count V); two declaratory judgments (Counts VI and VII); and punitive damages (Count VIII).

## STANDARD OF REVIEW

In order for a party to obtain summary judgment, there must be no genuine dispute as to any material fact and the party must show it is entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. A factual issue is genuine when there is sufficient supporting evidence that would "require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quotation marks omitted). A party with the burden or proof wishing to avoid summary judgment must present a prima facie case for each claim or affirmative defense asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 9, 868 A.2d 220.

At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

### I.    Personal Liability of Individual Defendants

Defendants first assert that there is no basis to hold them personally liable because the Agreement prohibits personal liability of members for the debts of the corporation and because Plaintiffs have not made out a case for piercing the corporate veil. Plaintiffs counter that the claims against the individual defendants do not relate to the debts of the corporation, but are based on duties each individual defendant owed as a shareholder and member. (Opp'n 19.) Moreover, Plaintiffs allege that issues of material fact preclude summary judgment on disregarding the corporate entity. (Opp'n 20; *see* A.S.M.F. ¶¶ 13-15.) In their reply brief,

5

Defendants argue that the facts as alleged are insufficient to raise an issue of material fact as to piercing the corporate veil. (Reply 7.)

"As a matter of public policy, 'corporations are separate legal entities with limited liability.'" *Johnson v. Exclusive Props. Unltd., Inc.*, 1998 ME 244, ¶ 5, 720 A.2d 568 (quoting *Theberge v. Darbro Inc.*, 684 A.2d 1298, 1301 (Me. 1996)). Courts are "reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice." *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n.5 (Me. 1981). "[B]efore a court may pierce the corporate veil, a plaintiff must establish that: (1) the defendant abused a privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Johnson*, 1998 ME 244, ¶ 6, 720 A.2d 568.

Whether there has been an abuse of the corporate form is an intensive factual inquiry balancing twelve different factors that typically is not suitable for summary judgment. *See Johnson*, 1998 ME 244, ¶ 7, 720 A.2d 568. Factors relevant to piercing the corporate veil are:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

*Id.*

The summary judgment record includes evidence of undercapitalization, common ownership of WIG and WIG, II, and transactions that benefited only some of the WIG shareholders to the detriment of the other shareholders, implicating factors 1, 4, 11, and 12. (A.S.M.F. ¶¶ 13-15.) Viewing the evidence in the light most favorable to the Plaintiffs, *see Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d 63, Plaintiffs have made a prime facie showing to support disregarding the corporate form on both elements and issues of material fact remain for

6

determination for a factfinder, *see Reliance Nat'l Indem.*, 2005 ME 29, ¶ 9, 868 A.2d 220; *Curtis*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## II.    The Degree of Consensus Required to Approve a Merger

The primary dispute between the parties is the degree of consensus required by the Agreement to approve a merger. Defendants' arguments are based on the language of the Agreement; they assert the Agreement only mandates a simple majority vote to approve a merger based on the plain language of the Agreement and the primacy of contract. Plaintiffs' arguments are based on the Act; they assert that when an agreement is silent on an issue, the default rules of the Act govern, which would require unanimity in this instance. In the alternative, the Plaintiffs assert the Agreement is ambiguous on merger and extrinsic evidence should be admitted.

The correct framework for the discussion is important, and it starts with the Act. "It is the policy of [the Act] and this State to give maximum effect to the principles of freedom of contract and to the enforceability of limited liability company agreements." 31 M.R.S. § 1507(1). Consistent with this policy, the Act provides that the agreement among the members of an LLC governs the relations among them, and the Act only governs matters not provided for in their agreement. *See* 31 M.R.S. § 1521(1), (2). More specifically, the statute states:

> **1.    Agreement governs.** Except as otherwise provided in subsection 3 and section 1522, the limited liability company agreement governs relations among the members as members and between the members and the limited liability company.
>
> **2.    When agreement does not otherwise provide.** *To the extent the limited liability company agreement does not otherwise provide for a matter described in subsection 1, this chapter governs the matter.*

31 M.R.S. § 1521 (emphasis added). As referenced in section 1522(1), there are certain categories of matters that members may not contract away or around, but merger is not one of

7

these matters.[9] Thus, pursuant to the Act, the Agreement controls the type of vote required to approve a merger, and to the extent the "[A]greement does not otherwise provide for" the type of vote to approve a merger, the default rules of the Act control.

The Agreement itself states with respect to voting:

> 1. **Shareholder Interests in the Company/Voting.** . . . Unless otherwise expressly provided herein, all actions and decisions of the Company shall be by majority vote of the Shareholders at a duly noticed Shareholder meeting, at which a quorum is present, where each Shareholder of record as reflected in Exhibit "A" (as it may be amended) shall have One (1) vote, ("Voting Interest") not withstanding the number of shares any shareholder may own ("Majority Interest").
>
> . . . .
>
> 7. **Quorum.** The Shareholders owning a Majority Interest, represented in person or by proxy, shall constitute a quorum at any meeting of Shareholders. . . .
>
> 8. **Manner of Acting.** If a quorum is present, a Majority Interest represented in person or by proxy shall constitute the act of the Shareholders, unless the vote of a greater number is otherwise required by the Act, by the Certificate of Formation, or by this Agreement. . . .

(Compl. Exh. A, art. V, §§ 1, 7, 8.) The Agreement provides that actions of the Company shall be by majority vote at a meeting at which a quorum is present, "unless the vote of a greater number is otherwise required by the Act, by the Certificate of Formation, or by this Agreement." For example, dissolution or amendment of the Agreement requires a vote of 75% of the shareholder voting interests. (A.S.M.F. ¶¶ 5-7; R.S.M.F. ¶¶ 5-7.) The Agreement does

---

[9] The Maine LLC Act does not allow the members to contract away "the implied contractual convent of good faith and fair dealing," 31 M.R.S. § 1521(3)(A), or "eliminate or limit a member's liability to the limited liability company and members for money damages for a bad faith violation" of the same, 31 M.R.S. § 1522(1)(F); "[v]ary the distinction between a limited liability company as an entity and its members," 31 M.R.S. § 1522(1)(A); "[v]ary a limited liability company's capacity . . . to sue or be sued in its own name," 31 M.R.S. § 1522(1)(B); change the applicable law from Maine to any other state, *see* 31 M.R.S. §§ 1506, 1522(1)(C); "restrict the rights under [the Maine LLC Act] of a person other than a member or transferee" unless that person has rights pursuant to the agreement, *see* 31 M.R.S. §§ 1522(1)(D), 1524(2); "[v]ary the power of the court," 31 M.R.S. § 1522(1)(E); waive the requirement that a contribution to the LLC be made in writing, 31 M.R.S. § 1522(1)(G); or vary with statutory winding up procedures of section 1597, 31 M.R.S. § 1522(1)(H).

not expressly reference merger or the ability of WIG to merge; it contains no reference to merger at all.

Defendants argue that the Agreement only requires a simple majority vote of the shareholders for merger because the Act, the certification of formation, and the balance of the Agreement do not require a greater vote. While recognizing that the Agreement does not expressly address merger, Defendants argue that the parties implicitly addressed merger in Article V, sections 1 and 8. Defendants assert that the Act, while creating a default rule for mergers, does not require parties to incorporate that provision into their agreement, thus not "requiring" a unanimous vote for a merger. Accordingly, merger can be accomplished with the vote of the Majority Interest, like all other actions of WIG at a shareholder meeting at which a quorum is present, which is what happened here.

Plaintiffs argue that because the Agreement is silent on merger, it is "not otherwise provided for" in the agreement and the default rules of the Act must apply. *See* 31 M.R.S. § 1521(2). Plaintiffs cite a number of cases in support of this position and cite to the legislative history of the Act.[10] In the alternative, Plaintiffs assert the agreement is ambiguous on the degree of consensus and thus the default rules of the Act apply or the parties' intent must be determined through a factual inquiry. *See Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 27, 1 A.3d 416 (explaining that when a contract is ambiguous, a court may consider extrinsic evidence of the parties' intent to construe the agreement).

The Court has reviewed the cases cited by both Plaintiffs and Defendants. The two most relevant cases discussed in the parties' briefs are *Lenticular Europe, LLC v. Cunnally*, 2005 WI App 33, 693 N.W.2d 302 (Wis. Ct. App. 2005), and *Huatuco v. Satellite Healthcare*, No. 8465-VCG, 2013 WL 6460898 (Del. Ch. Sept. 25, 2013), because they address the issue here: a claim that a

---

[10] Resort to the legislative history is only appropriate when the statutory language is ambiguous, meaning susceptible of more than one meaning. *See State Farm Mut. Auto Ins. Co. v. Koshy*, 2010 ME 44, ¶ 29, 995 A.2d 651. No party has suggested that the statute is ambiguous.

general provision encompasses a more specific issue not otherwise provided for in an LLC agreement, wherein the state's LLC statute would mandate a different outcome than that in the agreement. The two cases reach different outcomes, based on the language of the respective parties' contracts and on the court's interpretation of that state's LLC Act.

Maine's Act places a premium on primacy of contract. *See* 31 M.R.S. § 1507(1). Pursuant to the Act, the Agreement controls the type of vote required to approve a merger, and to the extent the "[A]greement does not otherwise provide for" the type of vote to approve a merger, the default rules of the Act control. 31 M.R.S. § 1521(1)-(2). The parties' Agreement generally provides for majority voting for all actions of the company. The Plaintiffs interpret this as silence on this issue of the degree of consensus required for merger, but the Court disagrees. The parties *did* include the voting requirements for merger through their general voting provision. *See McDonald v. Scitec*, 2013 ME 59, ¶ 11, 79 A.3d 374. The parties agreed that all actions of the LLC would be by majority unless otherwise stated in their agreement or required by the Act. Further, contrary to Plaintiffs' argument, the Act does not *require* a unanimous vote for merger because that is not one of the mandatory provisions of the Act. *See* 31 M.R.S. §§ 1521(3)(A), 1522.

This is the same conclusion of the *Huatuco* court. In *Huatuco* the plaintiff LLC member sought judicial dissolution of the LLC pursuant to Delaware's LLC statute when the agreement allowed for dissolution upon certain specified events, but did not include judicial dissolution among those triggers. 2013 WL 6460898, at *1, 3. As a catchall, the agreement stated: "Except as otherwise required by applicable law, the Members shall only have the power to exercise any and all rights expressly granted to the Members pursuant to the terms of this Agreement." *Id.* at *3. The plaintiff argued that the general provision could not alter the specific default rule of the LLC act, but the court disagreed. *Id.* at *4-5. Defendant made the same argument as

10

Defendants in this case: "judicial dissolution is not a mandatory provision of the LLC Act, and is therefore not 'required' by law; further, the LLC Agreement provides for dissolution under certain circumstances not present here, but fails to grant a right to seek judicial dissolution." *Id.* at *4. The court agreed, and concluded that because the agreement was not "silent" on dissolution, and the right to judicial dissolution was not "required" by the relevant LLC Act, the parties were limited to the rights granted to them by the Agreement. *Id.* at *5. *But see Lenticular*, 2005 WI App 33, ¶¶ 17, 693 N.W.2d 302 ("When the legislature provides a specific default term on a topic and the operating agreement does not explicitly refer to that topic, it is reasonable to conclude the parties did not intend to override that default term.").

Here, the Court interprets the Act to only govern matters not provided for in the Agreement. The Agreement provides for majority voting on all actions of the LLC, which action includes voting to merge with another LLC. Accordingly, the Court concludes that the vote taken on March 27, 2013, by WIG to merge with WIG II was valid.

## CONCLUSION

Based on the foregoing, the Court DENIES the motion for partial summary judgment in part and GRANTS the partial summary judgment in part. The Court denies summary judgment as to the personal liability of the individual Defendants because issues of material fact remain. The Court grants the motion with respect to the degree of consensus required to approve merger, concluding that the WIG LLC Agreement only required a simple majority vote.

Because Count I of the complaint is premised upon the Act mandating a unanimous vote, a premise that the Court has specifically rejected through this order, the Court GRANTS summary judgment in favor of Defendants on Count I of Plaintiffs' Verified Complaint.

11

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this order into the docket by reference.

Date: 3 / 31 / 14

M. Michaela Murphy
Business and Consumer Court

12

Jonathan M. Pound, Kris M. Pound, and D&H Insurance, LLC
v.
Weber Insurance Group, LLC, Weber Insurance Group, LLC, II, Kamron Kimball, Robert Kimball, Mark Cote, Todd Russell, Ethyl Potvin, Andrew Daigle, and Shelley Jamison


BCD-CV-13-44


**Jonathan M. Pound, Kris M. Pound, and D&H Insurance, LLC**

**Plaintiffs**

Counsel:                          Stephen Langsdorf, Esq.
                                  45 Memorial Circle
                                  PO BOX 1058
                                  Augusta, ME 04332


**Weber Insurance Group, LLC, Weber Insurance Group, LLC, II, Kamron Kimball, Robert Kimball, Mark Cote, Todd Russell, Ethyl Potvin, Andrew Daigle, and Shelley Jamison**

**Defendants**

Counsel:                          John Whitman, Esq.
                                  465 Congress St.
                                  PO BOX 9545
                                  Portland, ME 04112